IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

ROBERT OBRIEN,             )    CIVIL ACTION NO. 9:14-1154-BHH-BM
                                )
         Plaintiff,         )
                                )
v.                       )    **REPORT AND RECOMMENDATION**
                                )
CAROLYN W. COLVIN,       )
COMMISSIONER OF SOCIAL    )
SECURITY ADMINISTRATION,  )
                                )
         Defendant.      )
_____)

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein he was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Rule

73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI)[1] on December 3, 2010, alleging disability as of June 5, 2009 due to neuropathy in his

legs and high blood pressure. (R.pp. 91, 102, 164). Plaintiff's claims were denied initially and upon

reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which

was held on June 1, 2012. (R.pp. 26-69). At the hearing, Plaintiff amended his disability onset date

---

[1] Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No.
06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish
that [he] was disabled during the insured period for DIB may still receive SSI benefits if [he] can
establish that [he] is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005
WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir.
1999)[Discussing the difference between DIB and SSI benefits].



to January 1, 2011. (R.p. 34). Further, in addition to his neuropathy and hypertension, Plaintiff also testified at the hearing that he suffered from neck pain and some problems with his left elbow. (R.pp. 39-40, 57). The ALJ thereafter denied Plaintiff's claims in a decision issued September 7, 2012. (R.pp. 9-25). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-7).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].



Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was forty-three (43) years old on his amended alleged disability onset date, completed school through the eleventh grade (the ALJ found that he had a "limited" education), and has past relevant work experience as a brick mason. (R.pp. 20, 32). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in this case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[2] of peripheral neuropathy and hypertension, thereby rendering him unable to perform his past relevant work, he nevertheless retained the residual functional capacity (RFC) to perform a reduced range of sedentary work,[3] and was therefore not entitled to disability benefits. (R.pp. 14-15, 20-21).

---

[2]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[3]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and (continued...)



Plaintiff asserts that in reaching this decision, the ALJ erred by failing to give proper weight and consideration to the opinion of Plaintiff's treating physician Dr. David Rogers, and by failing to properly consider and evaluate Plaintiff's subjective testimony concerning the extent of his pain and limitations. Plaintiff further argues that the Appeals Council did not properly weigh and consider new evidence that was submitted to that body on appeal, thereby requiring remand for a proper consideration of this evidence. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

## I.

### (Medical Records)

Plaintiff's medical records as well as his testimony reflect that he was involved in an ATV accident in June 2008 (his original alleged disability onset date), in which he sustained a possible fracture of the anterior superior corner of the C6 vertible body. (R.pp. 34, 247). Plaintiff was seen following this accident by Dr. Rogers and well as by Dr. George Sutter, both of the Good Samaritan Health Clinic, where he complained of hypertension and also that his legs would get numb causing pain when he tried to stand or walk. However, when Dr. Sutter saw the Plaintiff on March 3, 2010, he noted that Plaintiff had not taken any medication for hypertension since July 2009, and

---

[3](...continued)
carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).



noted on another visit on June 30, 2010 that Plaintiff's lumbar x-rays were normal. (R.pp. 241, 245).

On June 29, 2010, Dr. Rogers, a neurologist, evaluated Plaintiff for his complaints of neuropathy

and assessed Plaintiff with neuropathy of "questionable etiology". (R.p. 242). On August 31, 2010,

Dr. Rogers noted that Plaintiff was using a cane and stated that standing still increased his pain.

(R.p. 240). Notwithstanding these complaints, however, Plaintiff was still working as a brick mason

continuing into 2010, and only stopped working when he "got laid off". (R.p. 33). He thereafter

drew unemployment benefits, meaning that he was looking for and was available for work; (R.p. 34);

and as previously noted, Plaintiff amended his alleged disability onset date at the hearing to January

1, 2011. Therefore, Plaintiff is not even himself contending that his condition was disabling during

this period of time. Hence, in order to obtain disability benefits, Plaintiff must show that his

condition substantially worsened after January 1, 2011 from what it had previously been. Orrick v

Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) [absent showing of significant worsening of condition,

ability to work with impairment detracts from finding of disability].

Plaintiff's medical records reflect that he was seen by Dr. Rogers on January 25, 2011

(which was now after Plaintiff alleges he became disabled), and there is nothing in this medical note

to indicate any significant worsening of Plaintiff's condition. However, even though Dr. Rogers

noted that Plaintiff's "problems [were] about the same", Plaintiff stated that he had "completed

paperwork for disability". (R.p. 254).

On February 22, 2011, Plaintiff had a consultative evaluation performed by Dr.

Melissa Richardson, also a neurologist. Although Plaintiff does not now claim that he was disabled

prior to January 1, 2011, Plaintiff told Dr. Richardson that he had been suffering from "constant"

pain and numbness in his lower extremities from around the knees down all the way to the feet



bilaterally ever since his four wheeler accident on June 6, 2009, and that his pain was on a scale of 8 or 9 out of 10. He did say that walking was not as bad as actually standing in one spot, and he specifically denied any problems with his upper extremities. Plaintiff also said he used a cane for any long distance walking. Dr. Richardson noted that Plaintiff also had a history of hypertension and some anxiety, and that he maintained a drivers license and continued to drive. She also reviewed Plaintiff's current medications with him, and there is no indication that Plaintiff made any comment or had any complaints about any side effects from his medications.

On examination Dr. Richardson found Plaintiff to be alert, oriented and cooperative, he exhibited no short term or long term memory problems, his judgment and insight appeared intact, and his mood and affect seemed appropriate for the circumstances. She also found Plaintiff to have 5/5 (full) strength in all muscle groups in both his upper and lower extremities. See Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]; Haynes v. Astrue, No. 09-484, 2010 WL 3377715 at * 3 (M.D.Ala. Aug. 25, 2010)["Muscle atrophy is an objective medical indication of pain and lack thereof in [Plaintiff] militates against the conclusion that [he] suffers from pain which precludes [him] from substantial gainful activity."]. Plaintiff was found to have a normal gait pattern on even surfaces, he was able to toe walk and heel walk, he had a negative Romberg[4] on testing, he had no

---

[4]A Romberg test is an indication of loss of the sense of position in which the patient loses balance when standing erect, feet together, and eyes closed. http://medical-dictionary.thefreedictionary.com/Romberg's+test, 2009.



musculoskeletal deformities on the feet suggestive of Charcot[5] or any other neurological deteriation, and while he did have altered sensation to light touch up to and about the level of the knee, he had negative FABER test[6] as well as a negative straight leg raise test. Dr. Richardson concluded her report by opining that she did "not find physical exam findings that would be consistent with neuropathy . . . .". She did state that Plaintiff had hypertension, and that nerve conduction studies may be of some benefit. (R.pp. 255-257). Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability].

On March 9, 2011 Dr. Xanthia Harkness reviewed Plaintiff's medical records and completed a Psychiatric Review Technique form in which she opined that Plaintiff did not have a severe mental impairment, had no restrictions in his activities of daily living or maintaining social function, and only a mild restriction with respect to maintaining concentration, persistence or pace. (R.pp. 258, 268). On that same date, Dr. Seham El-Ibiary also reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment in which he opined that Plaintiff had the RFC for medium work[7] with an unlimited ability to push and/or pull together with the ability to stand and/or walk for about six hours in an eight hour day, and sit for about six hours in an eight

---

[5]Charcot foot is a condition causing weakening of the bones in the foot that can occur in people who have significant nerve damage (neuropathy). http://www.foothealthfacts.org/footankleinfo/charcot-foot.htm 2015

[6]The FABER test (Flexion Abduction External Rotation) is a test for evidence of pathology in the sacroiliac and/or hip joints. http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2953301/ November 2007.

[7]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).



hour day.  He also found that Plaintiff had no postural, manipulative, visual, communicative or environmental limitations, and further noted that Plaintiff had only "questionable neuropathy" and that there was no evidence to "support [the] level of impairments stated by claimant".  (R.pp. 272-279).  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]; Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) [ALJ can give great weight to opinion of medical expert who has thoroughly reviewed the record].

Plaintiff thereafter continued to be seen by both Dr. Sutter and Dr. Rogers, although again there is nothing in these records to indicate any significant worsening of his condition (other than Plaintiff's own self reports about the extent of the pain he was experiencing), with Plaintiff even reporting himself on September 27, 2011 that his symptoms were "about the same".  See generally, (R.pp. 290-294).  Orrick, 966 F.2d at 370 [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability].  However, on the same date (September 27, 2011) where Dr. Rogers noted in his medical report that Plaintiff's condition continued to be "still about the same", he completed a Clinical Assessment of Pain form (apparently provided by Plaintiff's attorney) wherein he opined that Plaintiff would be unable to perform full time work at even a sedentary level, and that this had been Plaintiff's condition since at least June of 2009.  (R.p. 286).  Dr. Rogers further opined that Plaintiff suffered from significant side effects from his medications which would limit his ability to perform work duties or even such every day tasks a driving an automobile, and that his pain and/or drug side effects could be expected to be severe and would limit Plaintiff's effectiveness due to "distraction, inattentiveness, drowsiness, etc.".  (R.pp. 287-288).



Plaintiff thereafter continued to be seen at the Good Samaritan Health Clinic. (R.pp. 289-293). It is noted that in a response to a letter from the Social Security Administration dated June 5, 2012, requesting that Dr. Rogers complete a Medical Source Statement of Plaintiff's ability to do work related activities (physical), someone from the Good Samaritan Health Clinic wrote: "The highlighted doctor's notes were actually indicating that the patient had brought in completed paperwork. Dr. Rogers did not and would not fill out that paperwork. Dr. Rogers now, no longer sees patients here". (R.p. 302).

## II.

### (Treating Physician Opinion)

Plaintiff initially asserts that the ALJ committed reversible error by failing to give great or even controlling weight to the opinion of Dr. Rogers that Plaintiff is totally disabled. While Plaintiff is correct that a treating physician's opinion can be entitled to "great weight", the ALJ gave "very little weight" to Dr. Rogers' opinion as set forth in the questionnaire of September 2011, citing to the records from Dr. Rogers' own practice, the findings and opinions of the consultative neurologist Dr. Richardson, as well as the findings and opinion of the state agency physician. The undersigned can find no reversible error in the ALJ's treatment of this evidence. Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996) [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ]; see also Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].



The ALJ thoroughly reviewed and discussed the medical evidence with respect to Plaintiff's condition, including the questionnaire completed by Dr. Rogers in which he opined that he did not believe that Plaintiff could perform full time work at any exertional level. Of course, the ALJ was under no obligation to accept that conclusory opinion.[8] Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]; 20 C.F.R. § 404.1527(d) ["a statement that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"]. In discounting Dr. Rogers' opinion, the ALJ also noted the medical records from Dr. Rogers' own Good Samaritan Health Clinic, which contain little objective evidence of neuropathy other than some edema of the left knee. (R.pp. 17-18). Cf. Craig, 76 F.3d at 589-590 ["There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain'"]; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may assign lesser weight to the opinion of a treating physician that was based largely upon a claimant's self-reported symptoms]. There is also no indication in these medical records of Plaintiff suffering from any significant adverse effects from medications, even though that was also one of the boxes checked by Dr. Rogers in the questionnaire. Burch v. Apfel, 9 F. App'x 255 (4th Cir. 2001)[ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes.]; see also Johnson, 434 F.3d at 657 [ALJ properly rejected physician's opinion that was based on the

---

[8]Significantly, while Plaintiff is alleging that the ALJ should have given Dr. Rogers' opinion "great weight", it is noted that Dr. Rogers opined in this assessment form that Plaintiff had been disabled since June 2009, even though Plaintiff does not himself claim that his condition became disabling until January 2011.



claimant's own subjective complaints].

Further, in addition to the paucity of evidence from the Good Samaritan Health Clinic to support the degree of limitation claimed by Plaintiff and opined to by Dr. Rogers, the ALJ also cited to the contrary medical findings of Dr. Richardson, who found on examination that Plaintiff had 5/5 muscle strength, the ability to heel and toe walk, that Plaintiff had a normal gait, and that although Plaintiff did have light touch altered sensation up to about the level of the knees, there was no evidence of any neurological deterioration in the lower extremities. (R.p. 17). Richardson, 402 U.S. at 408 [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; Gaskin, 280 Fed.Appx. at 477 [Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment].

Finally, the ALJ also noted the findings and conclusions of the state agency physician, who determined that Plaintiff was actually capable of performing a full range of *medium work*, a level of work substantially higher than the RFC assigned by the ALJ in the decision. (R.p. 18). Smith, 795 F.2d at 345 [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]; cf. Ponder v. Colvin, 770 F.3d 1190, 1195 (8th Cir. 2014) [noting that opinions from state agency consultants may be entitled to even greater weight than the opinions of treating or examining sources]. Indeed, the ALJ expressly noted in his decision that he was giving Plaintiff every benefit of the doubt in finding that he had neuropathy and therefore gave only some weight to the state agency physician's opinion that Plaintiff could perform medium work, instead reducing Plaintiff's RFC so as to accommodate his claims that he had problems with standing and balancing. (R.pp. 18-19). See Marquez v. Astrue, No. 08-206, 2009 WL 3063106 at



* 4 (C.D.Cal. Sept. 21, 2006)[No error where ALJ's RFC finding was even more restrictive than the exertional levels suggested by the State Agency examiner]; see also Silver v. Colvin, No. 11-303, 2014 WL 4160009 at * 5 (M.D.NC. Aug. 19, 2014) [Same]; cf. Muir v. Astrue, No. 07-727, 2009 WL 799459, at * 6 (M.D.Fla. Mar. 24, 2009)[No error where ALJ gave Plaintiff even a more restrictive RFC than the medical records provided]; Thomas v. Celebreeze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; see also Cruse v. Bowen, 867 F.2d 1183, 1186 (8 h Cir. 1989)["The mere fact that working may cause pain or discomfort does not mandate a finding of disability].

After a review of the evidence, the ALJ determined that Plaintiff could perform at least sedentary work restricted to sitting for six out of eight hours, standing/walking two out of eight hours; with only occasional stooping, kneeling, crouching and crawling; no climbing of ladders, ropes or scaffolds; no balancing; and avoidance of concentrated exposure to workplace hazards such as unprotected heights and dangerous machinery. (R.p. 15). The ALJ determined that these restrictions would accommodate Plaintiff's condition consistent with the medical evidence documenting his impairments, while also giving Plaintiff every benefit of the doubt in determining an appropriate RFC. See Welch v. Heckler, 808 F.2d 264, 270 (3d Cir.1986)[findings of moderate pain or discomfort were appropriately accounted for in a reduced RFC finding]. Again, there is no reversible error shown with respect to these findings, nor does the undersigned find that the ALJ committed any reversible error in his consideration of the opinion of Dr. Rogers consistent with the medical evidence in the record.[9] Thomas, 331 F.2d at 543 [court scrutinizes the record as a whole

---

[9]While Plaintiff correctly notes that the ALJ mistakenly identified Dr. Rogers as a general practitioner, not a neurologist, that error does not change the medical records and evidence that were (continued...)



to determine whether the conclusions reached are rational]; Krogmeier, 294 F.3d at 1023 ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ]; cf. Craig, 76 F.3d at 589-590 ["There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain'"]; Poling v. Halter, No. 00-40, 2001 WL 34630642, at * 7 (N.D.W.Va. Mar. 29, 2001) ["It is the duty of the ALJ, rather than the reviewing court, to assess the evidence of record and draw inferences therefrom"], citing Kasey v. Sullivan, 3F.3d 75, 79 (4th Cir. 1993).

Therefore, this claim is without merit.  Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [The mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]; Andreoli v. Comm'r of Soc. Sec., 2008 WL 5210682, at *4 (W.D.Pa. Dec. 11, 2008) ["it is well settled that a claimant need not be pain-free or experiencing no discomfort in order to be found not disabled" (citing Welch v. Heckler, 808 F. 2d at 270)].

### III.

### (Credibility Determination)

With respect to Plaintiff's contention that the ALJ committed reversible error in his evaluation of Plaintiff's subjective testimony and credibility, this argument is also without merit.

---

[9](...continued)
considered by the ALJ in reaching his decision, and is therefore not by itself a ground for reversal of the decision.  Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [finding the ALJ's error harmless when the ALJ would have reached the same result notwithstanding an error in his analysis]; Davis v. Astrue, No. 07–231, 2008 WL 540899, at *3 (D.S.C. Feb. 22, 2008) [recognizing harmless error analysis]; see also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1999)["No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"].



The ALJ specifically discussed Plaintiff's testimony, but while concluding that Plaintiff did have medically determinable impairments that could reasonably be expected to cause the symptoms he alleged, he found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms was not credible to the extent inconsistent with the RFC set forth in the decision. (R.pp. 16-17, 18). In reaching this conclusion, the ALJ noted the medical records and evidence previously discussed, and that he had considered Plaintiff's testimony and made his decision "based on a consideration of the entire case record". (R.p. 16). That is exactly what he is supposed to have done. See SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) [Where a claimant seeks to rely on subjective evidence to prove the severity of her symptoms, the ALJ "must make a finding on the credibility of the individual's statements, based on a consideration of the entire case record."]; Mickles, 29 F.3d at 925-926 [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence].

Further, when objective evidence conflicts with a claimant's subjective statements, an ALJ is allowed to give the statements less weight; see SSR 96–7p, 1996 WL 374186, at *1; Craig, 76 F.3d 595 ["Although a claimant's allegations about his pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment."]; and after a review of the record and evidence in this case, the undersigned can find no reversible error in the ALJ's treatment of the subjective testimony given by the Plaintiff. Ables v. Astrue, No. 10–3203, 2012 WL 967355, at *11 (D.S.C. Mar. 21, 2012) ["Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant.",



14

citing to SSR 96–7p.]; <u>Bowen</u>, 482 U.S. at 146 [Plaintiff has the burden to show that he has a disabling impairment]; <u>Jolley v. Weinberger</u>, 537 F.2d 1179, 1181 (4th Cir. 1976)[finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled].

        With respect to Plaintiff's testimony, the ALJ noted Plaintiff's statements that he had been diagnosed with bilateral neuropathy that affected his balance and caused periodic falling which in turn affected his ability to stand and walk due to pain and numbness from his knees and feet and that he uses a cane to help him balance, as well as the extent of the pain and limitation he claims this condition caused. (R.p. 16). He also noted Plaintiff's testimony about suffering from neck pain that runs into his arms and hands, and that he could lift no more than 10 pounds on an occasional basis. However, he also noted that Plaintiff drives when necessary and sometimes rides along with his father in-law running errands, watches television at least eight hours a day, attends an hour church service on Sundays and Wednesdays, and considered this evidence along with the medical evidence showing that Plaintiff had full strength and no atrophy in his extremities with a normal gait, that he was able to heel and toe walk, that although he did have light touch altered sensation up to about the level of the knees, that Dr. Richardson had found no evidence of any neurological deterioration in the lower extremities, that the records from Good Samaritan Health had few objective findings recorded which would support the degree of pain and limitation claimed, that there were no statements in the case file noting that Plaintiff had complained of or reported any side effects from his prescribed medications, and that the state agency physician had determined that Plaintiff could perform work at the even higher level of medium level of work activity. (R.pp. 16-19). <u>See generally</u>, <u>Anderson v. Barnhart</u>, 344 F.3d 809, 815 [Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints]; <u>Hunter</u>



v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; see also Gaskin, 280 Fed.Appx. at 477 [Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]; Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 8 (S.D.Ohio Nov. 15, 2011)["[I]t is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, or testimony, and other evidence"]; Parris v. Heckler, 733 F.2d 324, 327 (4th Cir. 1984) ["[S]ubjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." (citation omitted)].

While Plaintiff complains that the ALJ did not properly consider the evidence relating to his depression and anxiety when assessing his credibility, there is simply no evidence that Plaintiff had any significant mental impairment. Plaintiff did not claim a mental impairment as a basis for disability in his application, there are very few medical records which even touch on this subject, and the psychological consultant who evaluated Plaintiff's medical history determined that Plaintiff had no severe mental impairments, a fact noted by the ALJ in his decision. (R.p. 18). The ALJ found, consistent with the evidence, that Plaintiff had no limitation in his activities of daily living or with respect to social functioning, and only a mild limitation in the area of concentration, persistence or pace, and that Plaintiff's mental impairment of depression was non-severe and therefore did not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities. (R.pp. 14-15). These findings are supported by substantial evidence in the record, and are not a basis for a reversal of the decision. Hays, 907 F.2d at 1456 [If there is evidence to justify refusal to direct a verdict where the case before a jury, then there is 'substantial evidence']; see also Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's



diagnosis, but on the claimant's actual functional limitations].

In sum, the ALJ did not conduct an improper credibility analysis, nor does his decision otherwise reflect a failure to properly consider the affect Plaintiff's impairments had on his ability to work. Rather, the record and evidence cited by the ALJ provides substantial evidence to support the ALJ's findings as to the extent of Plaintiff's limitations, and the undersigned can therefore find no reversible error in the ALJ's evaluation of Plaintiff's subjective testimony. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Cruse, 867 F.2d at 1186 ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability].

While Plaintiff seeks to have this Court give precedence to his testimony as opposed to the other evidence of record and substitute its own judgment for that of the ALJ, that is not the proper standard for review in a Social Security case. This Court may not overturn a decision that is supported by substantial evidence just because the record may contain conflicting evidence. Smith, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; see also Guthrie, No. 10-858, 2011 WL 7583572, at * 3, adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]; Kellough, 785 F.2d at 1149 ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)]. Therefore, this argument is without merit.



## IV.

### (Appeals Council Review)

Plaintiff's final claim of error is that the Appeals Council failed to properly consider the new and material evidence submitted to that body and erred in failing to remand the case for consideration of that evidence.

The record reflects that, after the ALJ's decision in this case, Plaintiff presented additional evidence to the Appeals Council which included a statement from Dr. Rogers dated March 25, 2013. In this statement, Dr. Rogers says that he first started seeing the Plaintiff in approximately March 2010, and that in his opinion Plaintiff "is not physically able to work at any type of job". Dr. Rogers opines that Plaintiff's primary problem is "mixed motor sensory neuropathy in his lower extremities that is severe and obvious on clinical examination". Dr. Rogers further opines that it is most probable that Plaintiff is suffering from a genetic disorder, and that he "has sensory loss in his lower extremities with 10 lbs. filament perception to the ankles and thermal perception to the mid calf bilateral." Dr. Rogers opines that Plaintiff's condition is "progressive and will not improve", that it causes "severe pain and numbness in his lower extremities", and that even if he were to work in a sedentary position "his pain would prevent him from being able to maintain sufficient concentration, persistence and pace to be able to perform even a simple sedentary job." Dr. Rogers also states that Plaintiff's "depression and the side effects of his pain medications would contribute to this limitation." Dr. Rogers further opines that Plaintiff "probably" has a compressed nerve in his neck, and that "he should not engage in prolonged posturing or repetitive motions with his arms". Dr. Rogers concludes by stating that Plaintiff "has been limited to the degree I describe above throughout the time period I have treated him although his condition is progressively worsening". (R.p. 329).



> Pursuant to 20 C.F.R. §404.970:
>
> > If new and material evidence is submitted, the Appeals Council shall consider the additional evidence . . . where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). In order to be "new" evidence, the evidence must not be "duplicative or cumulative," and in order to be "material," there must be a "reasonable possibility that it would have changed the outcome." Wilkins v. Secretary of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). Here, the Appeals Council considered this evidence, but found that it did not provide a basis for changing the Administrative Law Judge's decision. (R.p. 2). There is no error shown in the Appeals Council decision.

The Fourth Circuit held in Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011), that Appeals Councils are not required to articulate a rationale for denying a request for review, and are required to make findings of fact and explain its reasoning only where it grants a request for review and issues its own decision on the merits. Meyer, 662 F.3d at 706. While Plaintiff argues that this was new and material evidence and that there is a reasonable possibility that it would have changed the outcome of the decision had it been before the ALJ, the ALJ already had Dr. Rogers' medical records and evidence before him for consideration at the time he issued the decision, as well as the previous opinion of disability from Dr. Rogers. While Dr. Rogers' March 2013 letter arguably puts a little more "meat on the bones" for why he believed Plaintiff was entitled to disability, it was basically the same opinion he had already rendered. Dr. Rogers repeats his previous opinon that he believes Plaintiff is totally disabled form work, an opinion the ALJ already had before him and rejected. 20 C.F.R. § 404.1527(d) ["a statement that you are 'disabled' or 'unable to work' does not

19



mean that we will determine that you are disabled"].  This new evidence also does not address or change any of the other evidence already relied on by the ALJ in reaching his decision.  No new records from Good Samaritan Health have been submitted to rebut the evidence already before the ALJ, nor is any other evidence from the relevant time period presented to call into question the consultative physician or state agency opinions.  Therefore, this new statement from Dr. Rogers does not provide a basis for a reversal of the decision in this case.

Dr. Rogers does mention in this letter that he believes Plaintiff's condition is progressive and is worsening, and if Plaintiff believes that his condition has worsened since the ALJ's decision such that he may now be entitled to disability, he is of course free to file a new application at any time. See e.g. Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997)["Additional evidence showing a deterioration in a claimant's condition significantly after the date of the Commissioner's final decision is not a material basis for remand, although it may be grounds for a new application of benefits."].  However, the only issue before this Court is whether substantial evidence support the ALJ's determination that Plaintiff was not entitled to disability benefits through the date of the ALJ's decision, September 7, 2012.  Substantial evidence does support that finding, and therefore this argument is without merit.

## Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision.  Blalock, 483 F.2d at 775.



Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 8, 2015
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

